**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **Andrew Green and Shirley Green, as legal guardians of N.G. (a minor child)** and **Andreia Samoria Green** | )<br>)<br>) Case No. 2:19-cv-00366-RMG<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| **Kanye West; Getting Out Our Dreams, II, LLC; UMG Recordings, Inc. a/k/a Universal Music Group**; **Def Jam Recordings; Cydel Young d/b/a Mr. Redan Music a/k/a Mr. Redan; BMG Rights Management (US), LLC a/k/a BMG Platinum Songs US** and **John Does 1-30**; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

# Plaintiffs' Response in Opposition
# to Motion to Dismiss of Defendant BMG Rights Management (US), LLC a/k/a BMG Platinum Songs US

Plaintiffs submit the following in opposition to BMG's motion to dismiss (Entry 24):

### Introduction

This matter involves the unauthorized sampling of audio of Plaintiffs N.G. and Andreia Samoria Green praying (the "Green Samples"). The Defendants are owners of the copyrights in the song "Ultralight Beam" (which contains the Green Samples) and "The Life of Pablo" (which contains "Ultralight Beam"). (Entry 15-2). Plaintiffs, who include N.G., her guardians, and Andriea Green, filed suit on February 7, 2019, asserting claims for copyright infringement (direct, vicarious, and contributory), misappropriation of personality, unfair trade practices, and quantum meruit. (Entry 1). Plaintiffs amended their complaint on June 5, 2019, rewording some causes of action and adding a cause of action for Falsification of Copyright Management Information. (Entry 15). Defendants Kanye West; Getting Out Our Dreams, II, LLC; UMG Recordings, Inc. a/k/a Universal Music Group; and Def Jam Recordings have been served and answered the Amended Complaint on July 3, 2019. (Entry 25). Defendant Cydel Young d/b/a Mr. Redan Music a/k/a Mr. Redan remains unserved, but his purported attorney was sent a Request to Waive Summons on June 11, 2019.[1] Defendant BMG moved on July 3, 2019, to dismiss the Greens' Amended Complaint on the grounds that this Court lacked personal jurisdiction.

---

[1] Young is listed as "C/O" BMG on Copyright Office records. (Entry 15-2 p. 3). Discovery on this issue will be necessary to determine if their relationship is such that service on Defendant BMG also operates as service on Defendant Young.

**Argument**

The allegations of the Amended Complaint, construed in a light most favorable to the Greens, support this Court's exercise of personal jurisdiction[2] over BMG. The declaration filed by BMG does not controvert the Greens' *prima facie* showing of jurisdiction; said showing is further supported by the declarations attached to this pleading. Finally, the remaining Defendants who have appeared do not contest this Court's jurisdiction, making litigation in this forum the most reasonable option. This Court must deny BMG's motion.

**I.     Personal Jurisdiction - Standard**

A reviewing court may decide the jurisdictional question on the basis of a separate evidentiary hearing, or evidence received at trial, or "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). The allegations of the complaint, except insofar as controverted by the defendant's affidavit(s), must be taken as true. Wolf v. Richmond Cty. Hosp. Auth., 745 F.2d 904, 907 (4th Cir. 1984) (citing Black v. Acme Markets, Inc., 564 F.2d 681, 683, n.3 (5th Cir. 1977)). Where the issue is to be decided on the motion papers and attached memoranda, the plaintiff need only make a *prima facie* case of personal jurisdiction. New Wellington, 416 F.3d at 294. The court must thereon "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (citation omitted).[3]

---

[2] After reviewing BMG's arguments, the pleadings, and the declarations, the Greens believe that specific jurisdiction, as opposed to general jurisdiction, over BMG is applicable under the facts of this case as pled.

[3] BMG makes a number of misleading and irrelevant allegations of fact in its memorandum,

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). This can be met by showing either general or specific personal jurisdiction. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002) (citations omitted).

To determine whether specific jurisdiction exists, a court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). In other words, the defendant must have "minimum contacts" with the forum, the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-476 (1985).

## II. BMG has purposefully availed itself of the privilege of conducting business in this state, and Plaintiffs' claims against BMG arise out of BMG's conduct.

As set forth above, in order to determine if the Greens have set forth a *prima facie* case of personal jurisdiction, this Court must take all allegations uncontroverted by BMG's affidavit(s)/declaration(s) as true and construe all of the Greens' allegations in a light most favorable towards them and jurisdiction, and assume credibility. Wolf, *supra.*; New Wellington, *supra.* The determination of whether BMG has "purposefully availed" itself of the privilege of doing business in South Carolina is "not susceptible of mechanical application". Consulting Eng'rs

---

particularly at footnotes 2 and 3, that violate this rule and should not be considered until the Greens have an opportunity to present their case on the merits.

Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). BMG's mechanical application of the nonexclusive factors found in Consulting Eng'rs Corp. (Entry 24-1 pp. 9-10) is inappropriate under the facts of this case. To determine purposeful availment, this Court must look to other law.

> A.      This Court possesses personal jurisdiction over BMG under an "effects test" analysis.

This Court would be better advised to examine the facts of this case under the "effects test" of Calder v. Jones, 465 U.S. 783 (1984). "In [Calder], the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." Carefirst of Md. v. Carefirst Pregnancy Ctrs., 334 F.3d 390, 397-98 (4th Cir. 2003).

> This "effects test" of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Id. at 398 n.7.

Personal jurisdiction over BMG (and all other Defendants) is appropriate under this test. As to element one, the Greens have alleged willful (*i.e.* intentional) infringement, and this allegation has not been controverted by affidavit. (Entry 15 ¶¶ 45, 55, 56). The other causes of action also allege intentional conduct, either directly or via incorporation, and these allegations have not been controverted by affidavit. (Entry 15 ¶¶ 63, 66, 76, 79).

As to element two, "[c]opyright violation is a tort, and that tort occurs where the owner of the copyright suffers damage." Dash v. Mayweather, No. 3:10-cv-1036-JFA (D.S.C. Order dated Aug. 25, 2010) *aff'd on other grounds,* 731 F.3d 303 (4th Cir. 2013) (citing Beverly Hills Fan Co.

v. Royal Sovereign Corp., 21 F.3d 1558, 1570 (Fed. Cir. 1994)) (attached as Exhibit A). Likewise, the remaining causes of action, which are either statutory or common law torts, occur where the injured party resides.

As to element three, under the "effects test" it is sufficient for the Greens to allege that BMG "knew of the infringing activity." See Copeland v. Beiber, No. 2:13-cv-00246-AWA-TEM (E.D.Va. Order dated Dec. 17, 2013) *vacated on other grounds*, 789 F.3d 484 (4th Cir. 2015) (attached as Exhibit B); see also Dash, *supra*. (knowledge of the copyright and its use in forum was sufficient to present *prima facie* case of intent). BMG cannot dispute that it, via its agent[4] Broadcast Music Incorporated ("BMI"), licenses its copyrighted works for profit to South Carolina-based individuals and entities. (Entry 15 ¶ 17). According to the Amended Complaint, registration PA0002088290 ("Ultralight Beam") is owned by Defendant Young and Defendant BMG. (Entry 15 ¶¶ 35, 42; Entry 15-2). BMG, through its agent BMI, has solicited the sale of licenses to publicly perform its copyrighted works in South Carolina, which include "Ultralight Beam". (Entry 15 ¶¶ 50, 57, 68-70, 80).[5] Pursuant to these licenses, third parties have publicly performed "Ultralight Beam", and thus have infringed N.G.'s copyright and N.G. & Andreia Green's rights of publicity. (Entry 15 ¶¶ 50, 57, 66, 68, 69). BMG knew or should have known of this infringement and its effects on the Greens, either due to BMG's failure to conduct or require sample clearance and/or through the constructive notice of N.G.'s April 21, 2016 copyright registration, which predates the registration for "Ultralight Beam". (Entry 15 ¶¶ 55-56; Entry 15-

---

[4] "An agent is one appointed by a principal as his representative and to whom the principal confides the management of some business to be transacted in the principal's name, or on his account, and who brings about or effects legal relationships between the principal and third parties." Thompson v. Ford Motor Co., 200 S.C. 393, 414, 21 S.E.2d 34, 43 (1942).

[5] BMI's attempts to license BMG's copyrights via letter can also be found in Exhibit D, which is discussed in more detail later in this argument.

2; Entry 15-3). Bouchat v. Bon-Ton Dept. Stores, Inc., 506 F.3d 315, 329 (4th Cir. 2007) (constructive notice via copyright registration). These facts establish that BMG has purposefully availed itself of the privilege of licensing its copyrights in South Carolina, and that the Green's claims arise out of *BMG's contact with this state*. See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty., 137 S. Ct. 1773, 1780 (2017) ("[T]o exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum.") (internal quotation marks omitted); Walden v. Fiore, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (same).

The Northern District of Illinois found it had personal jurisdiction over BMG by applying the "effects test" to facts very similar to those at bar. See Carter v. Pallante, 256 F.Supp.3d 791 (N.D.Ill. 2017). In Carter, the owner of copyrighted music alleged that BMG (and other defendants) "represented to numerous third parties it could license — and did license to those third parties — the performance rights and other rights to [plaintiff Carter's songs.]" Id. at 797. The third parties publicly performed the works, and BMG, *inter alia*, reaped financial benefits (via royalties) from these performances. Id. The court found it had personal jurisdiction over BMG in that action:

> Here, Carter's suit is based on intentional actions that the Publisher Defendants [including BMG] allegedly took in Illinois — specifically, selling licenses to his copyrighted songs to Illinois-based entities — knowing and intending that the effect of such actions would be felt in Illinois…This is a sufficient basis on which to conclude at the present stage that the Publisher Defendants [including BMG] purposefully directed the alleged conduct at Illinois and that Carter's suit arises directly from that conduct.

Id. at 797 (citing Tamburo v. Dworkin, 601 F.3d 693 (7th Cir. 2010) (citing Calder)). The allegations of the Greens' Amended Complaint, and particularly paragraphs 17, 51, & 57, are substantially similar to the allegations of Carter. Compare 256 F.Supp.3d at 796 (Carter's

allegations) with Entry 15 ¶ 17 (Greens' allegations). This Court should find that it has personal jurisdiction over BMG, just as its sister court in the Northern District of Illinois did.

### B. The declaration submitted by BMG does not defeat jurisdiction and is contradicted by the declarations submitted by the Greens.

The declaration of Joseph Gillen (Entry 24-2), submitted by BMG in support of its motion to dismiss, does not contradict the Green's allegations or defeat jurisdiction. Gillen's declaration states, in relevant part: "BMG does not directly target or solicit business in South Carolina." (Entry 24-2 p. 2). While this statement might be technically true, it omits a salient fact: BMG, *through its agents*, does directly target and solicit business in South Carolina. See Carter, *supra* (jurisdiction over BMG due to acts of its agents in Illinois); S.C. Code § 36-2-803 (personal jurisdiction for acts of agents). The declarations and pleadings attached to this response provide ample proof of both BMI's agency and its efforts in South Carolina on behalf of BMG. BMI is apparently authorized to bring suit on behalf of BMG to enforce its copyrights, and has done so at least three times in this district since February of 2018. (Study Hall, Cottage Street Crew, & JBCM Holdings complaints – Ex. C). According to the declaration of a BMI executive filed by BMG in one of these suits, BMI acts to license and enforce BMG's copyrights in this state:

> …BMI had been granted, by the other Plaintiffs [including BMG], the right to publicly perform these compositions and to issue public performance license agreements to music users. These licenses permit music users to perform any of the 14 million musical compositions in the BMI repertoire. In addition, BMI has been granted by the other Plaintiffs [including BMG] the right to maintain actions for infringement of the public performance rights in their musical compositions and to seek damages for such infringement.

(04/29/2019 Decl. of John Ellwood – Ex. D pp. 4-5). According to this declaration, BMI does not make a profit from its licensing of BMG's works: any net income (which presumably includes the damages from infringement actions) is passed through to its affiliated publishers, such as BMG. (Ex. D p. 5). Another declaration in the Study Hall case establishes that BMI regularly solicits the

sale of licenses of the copyrights of BMG, and others, in South Carolina. (04/29/2019 Decl. of Brian Mullaney – Ex. D pp. 7-36). This declaration also establishes that BMI, on behalf of BMG, was soliciting the licensing of BMG's copyrights after the registration of BMG's copyright in "Ultralight Beam" was registered (September 9, 2017). (Ex. D pp. 24-36; Entry 15-2 p. 3).

> C.   In the alternative, this Court possesses personal jurisdiction over BMG under a "stream of commerce" analysis.

Personal jurisdiction over BMG is also appropriate under a "stream of commerce" analysis, requiring that a corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum and that it can reasonably anticipate being haled into court in the forum. Dash, *supra*. (Ex. A p. 13) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). Viewing the facts (set forth above) in a light most favorable to the Greens, BMG has knowingly allowed its copyrights to be licensed by South Carolina parties via BMI. BMG should also reasonably anticipate being haled into court regarding its copyrights, considering that it routinely files actions in South Carolina to enforce its copyrights.

**III.    Exercise of personal jurisdiction over BMG is reasonable.**

Courts evaluate the reasonableness of personal jurisdiction by considering "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are both aspects of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Burger King, 471 U.S. at 477. "Even a single contact may be

sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Carefirst, 334 F.3d at 397 (citations omitted).

In this case, fair play and substantial justice demand that this action be litigated in its entirety in South Carolina. Defendants West, GOOD, UMG, and Def Jam have not contested personal jurisdiction in their answer. (Entry 25). It would be unreasonable to now require the Greens to file a separate lawsuit against BMG in either Delaware or New York and litigate in two jurisdictions. See Carter at 797. Overlapping litigation in two jurisdictions would give rise to the danger of inconsistent results; further, the best chance of settlement, thus avoiding a complex trial, is if all claims can be resolved in one forum. Smith v. Teledyne Con. Motors, Inc., 840 F.Supp.2d 927, 934 (D.S.C. 2012). As is set forth in Argument I, the injuries in this case occurred in South Carolina. The property rights infringed, whether they be a copyright or a right of publicity, are owned by South Carolina citizens, and this state has a compelling interest in discouraging injuries that occur within it. Fallon Luminous Prods. Corp. v. Multi Media Elecs, Inc., 343 F. Supp. 2d 502, 508 (D.S.C. 2004).

BMG's evidence to counter this overwhelming showing of reasonableness is as follows:

> …[I]t would be inconvenient and burdensome to subject BMG to jurisdiction in South Carolina because it is a Delaware company with its principal place of business in New York…there would be a substantial burden on the parties, as well as corporate witnesses, to travel to South Carolina for judicial proceedings or depositions.

(Entry 24-1 p. 12). However, since February of 2018, BMG has instituted *at least* three copyright infringement lawsuits in South Carolina involving its works, instead of in New York or Delaware. (Ex. C). BMG does not present any evidence relating to the remaining factors for reasonableness. Accordingly, exercise of jurisdiction in this case is constitutionally reasonable.

**IV.     Exercise of jurisdiction under the South Carolina long-arm statute is appropriate.**

Though this Court need only conduct an analysis under constitutional due process, ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999), the facts of the Amended Complaint also support jurisdiction under South Carolina's long-arm statute. This statute states, in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
>
> …
>
> (3) commission of a tortious act in whole or in part in this State;
>
> (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
>
> …

S.C. Code § 36-2-803. Viewing the facts of the Amended Complaint in a light most favorable to the Greens, BMG has, through its agent BMI, at a bare minimum, engaged in vicarious and/or contributory copyright infringement by licensing the performance of "Ultralight Beam" (and thus the Green Samples) for profit. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."). This behavior constitutes the "commission [by an agent] of a tortious act in whole or in part in this State", and long-arm jurisdiction under S.C. Code § 36-2-803(3) is appropriate. It is noteworthy the plaintiff in Carter also asserted jurisdiction over BMG under Illinois' long-arm statute, which contains a substantially similar provision and similar facts. Carter at 796; 735 ILCS 5/2-209(2). Further, BMG's acts to license "Ultralight Beam" outside of this state (e.g. contracting with BMI to represent its interests)

led to the infringement of the Green Samples. Because BMG derives substantial revenue from the licensing of its copyrighted works in South Carolina (including "Ultralight Beam"), specific jurisdiction is also appropriate under S.C. Code § 36-2-803(4).

## Conclusion

For the arguments set forth above, the Greens ask that this Court deny BMG's motion and allow this case to be decided expeditiously on its merits.[6]

Dated: 07/17/2019

/s/ Jason Scott Luck
Jason Scott Luck (Fed. Id. 9696)
jluck@garrettlawsc.com
Ryan A. Love (Fed. Id. 12828)
rlove@garrettlawsc.com
Garrett Law Offices, LLC
1075 E. Montague Ave.
North Charleston, SC 29405
843.554.5515 (phone)
843.747.3198 (telefax)
**Attorneys for Plaintiffs**

---

[6] To the extent this Court believes any jurisdictional facts remain in question, the Greens ask this Court to defer any jurisdictional decisions until the merits are heard. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 198 (D.C. Cir. 1992) ("…though the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard.") (citing Land v. Dollar, 330 U.S. 731, 731 (1947)). Alternatively, the Greens would request jurisdictional discovery. See Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 644 (D.S.C. 1992), aff'd, 6 F.3d 177 (4th Cir. 1993).