# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Andrew Green and Shirley Green, as legal guardians of N.G. (a minor child) and Andreia Samoria Green<br><br>Plaintiffs,<br><br>v.<br><br>Kanye West; Getting Out Our Dreams, II, LLC; UMG Recordings, Inc. a/k/a Universal Music Group; Def Jam Recordings; Cydel Young d/b/a Mr. Redan Music a/k/a Mr. Redan; BMG Rights Management (US), LLC a/k/a BMG Platinum Songs US and John Does 1-30,<br><br>Defendants. | Civil Action No. 2:19-00366-RMG<br><br><br><br>**ORDER** |

This matter is before the Court on Defendant BMG Rights Management (US), LLC a/k/a BMG Platinum Songs US's ("BMG") motion to dismiss for lack of personal jurisdiction. (Dkt. No. 24.) For the reasons set forth below, the Court grants the motion to dismiss.

## I.     Background

This action stems from an alleged unlawful sampling of a recorded audio of Plaintiffs N.G. and Andreia Samoria Green praying (the "Green samples"). Plaintiffs include N.G., her guardians, and Ms. Green. Plaintiffs filed a Complaint on February 7, 2019 followed by an Amended Complaint on June 5, 2019. (Dkt. Nos. 1, 15.) Plaintiffs assert claims for: (1) copyright infringement; (2) vicarious copyright infringement; (3) contributory copyright infringement; (4) falsification of copyright management information; (5) wrongful appropriation of personality; (6) unfair trade practices; and (7) quantum meruit. (Dkt. No. 15.)

Plaintiffs allege that around January 20, 2016, N.G. prayed over Ms. Green to seek good fortune for Ms. Green's trip to Atlanta. (Dkt. No. 15 at ¶ 20.) N.G.'s biological mother, Alice T. Johnson used her cell phone to record N.G. praying over Ms. Green and uploaded the video to Instagram (the "Green samples"). (*Id.* at ¶ 21–22.) Plaintiffs allege the Green samples gained popularity on Instagram and garnered thousands of page views. (*Id.* at ¶ 24.) Plaintiffs allege that on or about February 8, 2016, an attorney for Defendants West, Good, UMG, and Def Jam contacted Ms. Johnson to request permission to use the audio from the Green samples. (*Id.* ¶ 25.) Plaintiffs further allege that Ms. Johnson agreed to preliminarily allow Defendant West to use the Green samples in a song in his upcoming album, provided she receive later payment. (*Id.* at ¶ 27.) Plaintiffs allege they did not enter a licensing agreement with Defendants and were not paid by or on behalf of Defendants. (*Id.* at ¶ 29.)

The Green samples are featured in "Ultralight Beam" on Defendant West's album, "The Life of Pablo." (*Id.* at ¶ 30.) The album was released on February 14, 2016 and Plaintiffs allege the album was successful and has been certified as "platinum" (1,000,000 equivalent album units). (*Id.* at ¶ 34.) Plaintiffs allege Defendant West performed "Ultralight Beam" at Madison Square Garden in New York City on February 11, 2016. (*Id.* at ¶ 31.) Plaintiffs also allege Defendant West performed "Ultralight Beam" on the television show, *Saturday Night Live* on February 13, 2016. (*Id.* at ¶ 32.) Plaintiffs allege Defendants own the public copyright management information for "The Life of Pablo" and "Ultralight Beam", recognize N.G. and Ms. Green as providing "additional vocals", but do not list either Plaintiff as authors. (*Id.* at ¶ 35.) (Dkt. No. 15-1; 15-2.) To date the parties have not entered a licensing agreement and Plaintiffs have not been compensated for use of the Green samples.

The parties agree that Defendant BMG is a Delaware limited liability company. (Dkt. No. 24-2 at ¶ 2.) (Dkt. No. 15 at ¶ 12.) BMG 's principal place of business in New York. (Dkt. No. 24-2 at ¶ 2.) Plaintiffs allege BMG licensed for profit the copyrighted Green samples either directly or through its agent BMI to South Carolina based and non-South Carolina based entities which caused injury to Plaintiffs who are South Carolina residents. (*Id.* at ¶¶ 1–5, 12, 17.) The parties dispute the Court's jurisdiction over BMG. On July 3, 2019, Defendant BMG filed a motion to dismiss for lack of personal jurisdiction. (Dkt. No. 24.) Plaintiffs filed a motion in opposition, followed by BMG's reply. (Dkt. Nos. 34, 37.)

## II. Legal Standard

When a court's personal jurisdiction is challenged under Federal Rule of Civil Procedure, 12(b)(2) the burden is on the plaintiff to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." *Id.* However, the plaintiff's showing must be based on specific facts set forth in the record. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The Court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404–05 (D.S.C. 2012) (internal quotation and alteration marks omitted); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 205 (internal quotation marks omitted).

Whenever a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations. *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 835 (D.S.C. 2015). Instead, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the non-resident defendant. *Id.*

To meet their burden, Plaintiffs must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g.*, *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130–31 (S.C. 1992). Thus, the first step is collapsed into the second, and the only inquiry before the court is whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *Sonoco Prods. Co. v. Inteplast Corp.*, 867 F. Supp. 352, 352 (D.S.C. 1994).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). To determine whether specific jurisdiction exists, the Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the

exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397. (internal citations omitted). In other words, the defendant must have "minimum contacts" with the forum, the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 471–76 (1985).

Courts evaluate the reasonableness of personal jurisdiction by considering a variety of factors including: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are aspects of the requirement of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

In cases involving intentional torts, *Calder v. Jones* provides what is commonly referred to as the "effects test" and which provides guidance in assessing the "purposeful" requirement discussed above. 465 U.S. 783 (1984). To establish specific personal jurisdiction over an alleged tortfeasor, *Calder* requires plaintiff to show: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. *Consulting Eng'rs Corp., v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

### III. Discussion

#### A. *Calder v. Jones* "Effects Test"

Plaintiffs argue that the Court may exercise specific personal jurisdiction over BMG based on the effects test articulated in *Calder*.[1] Here, the complaint alleges that BMG committed acts of copyright infringement by selling licenses for profit to South Carolina individuals or entities through a third-party, BMI. (Dkt. No.15 at ¶¶ 17, 51, 57.) The third-parties then allegedly performed "Ultralight Beam" which contained the Green samples. (*Id.*) Plaintiffs allege BMG had knowledge of the Green samples' copyright because Defendants are owners, in whole or in part, of "The Life of Pablo" and "Ultralight Beam" but neither registration includes Ms. Green or N.G. as authors. (Dkt. No. 15 at ¶ 43.) The first element of the "effects test" requires the defendant to commit an intentional tort. Plaintiffs allege this element is met because they make claims of copyright infringement against Defendants and allege Defendants actions were "willful (i.e. intentional)" among making claims for other intentional torts. (Dkt. No. 34 at 5.) (Dkt. No. 15 at ¶¶ 45, 55, 56, 63, 66, 76, 79.) Copyright infringement is considered an intentional tort. *See Dash v. Mayweather*, No. 3:10-CV-1036-JFA, 2012 WL 1658934, at *1 (D.S.C. May 11, 2012) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570 (Fed. Cir. 1994)). Viewing the complaint and the evidence in the light most favorable to Plaintiff, the Court finds Plaintiffs allege BMG committed the intentional tort of copyright infringement, satisfying the first element under *Calder*.

The Court will analyze elements two and three under the "effects test" together because Plaintiffs allege BMG's tortious activity was felt in South Carolina and directed toward South Carolina as the result of the actions of its third-party agent, BMI. Element two requires plaintiffs

---

[1] Plaintiffs do not claim that the Court has general personal jurisdiction over BMG. (Dkt. No 34 at 3, fn 2.)

to show they felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm. Copyright violation occurs where the owner of the copyright suffers damage. *Dash*, No. 3:10-CV-1036-JFA, 2012 WL 1658934, at *1(citing *Beverly Hills Fan Co.*, 21 F.3d at 1570). This usually occurs when the tortfeasor sells infringing content in the copyright holder's home state. *Dash*, No. 3:10-CV-1036-JFA, 2012 WL 1658934, at *1 (citing *Beverly Hills Fan Co.*, 21 F.3d at 1570). Element three requires plaintiffs to show the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. To satisfy elements two and three, Plaintiffs primarily argue BMG directed tortious activity toward South Carolina based on the actions and contacts of its agent, BMI.

Plaintiffs allege BMG sold the license to "Ultralight Beam" which contained the Green samples to BMI and contracted for BMI to represent BMG and sell additional licenses to individuals and entities based in and out of South Carolina. (Dkt. No. 34 at 12.) (Dkt. No. 15 at ¶¶15, 17, 51, 57.) Plaintiffs allege that as a result, BMG derived "substantial revenue" from the licensing of Plaintiffs' copyrighted Green samples sufficient to establish specific jurisdiction under South Carolina's long arm statute. (Dkt. No. 34 at 12.) (Dkt. No. 15 at ¶ 15, 17, 51, 57.) In addition, Plaintiffs argue BMG may "at the bare minimum" be held liable for the actions of its agent, BMI, for vicarious copyright infringement.[2] (Dkt. No. 34 at 11.) The activities of a party's

---

[2] Plaintiffs also briefly argue that it is sufficient to plead BMG "knew of the infringing activity" and BMG should have known of the infringement and its effects on Plaintiffs either due to BMG's failure to conduct or require sample clearance and/or through the constructive notice of N.G.'s April 21, 2016 copyright registration, which predates that of "Ultralight Beam." (Dkt. No. 34-4 at 6.) The Court finds this argument is conclusory as Plaintiffs do not allege facts that create a reasonable inference BMG was actually aware of Plaintiffs copyright at the time it granted a musical performance right to BMI. *Copeland v. Bieber*, No. 2:13-cv-00245-AWA-TEM (E.D.Va. Order Dec. 17, 2013) (finding allegations that Defendant's manager discussed Plaintiff's copyrighted musical composition with Plaintiff shortly before Defendant recorded the

agent may count toward the minimum contacts necessary to support specific jurisdiction. *Tetrev v. Pride Int'l, Inc.*, 465 F. Supp. 2d 555, 559–60 (D.S.C. 2006). As such, the Court will analyze whether the evidence establishes an agency relationship between BMG and BMI.

Upon a review of the complaint, pleadings, and affidavits in a light most favorable to Plaintiffs, there are insufficient allegations or facts for the Court to infer an agency relationship exists between BMG and BMI. "An agent is one appointed by a principal as his representative and to whom the principal confides the management of some business to be transacted in the principal's name, or on his account, and who brings about or effects legal relationships between the principal and third parties." *Thompson v. Ford Motor Co.*, 21 S.E.2d 34, 43 (1942) (Dkt. No. 34 at 6, fn. 4.) The test to determine agency is whether or not "the purported principal has the right to control the conduct of its alleged agent," and the party asserting the existence of an agency relationship has the burden of proving the agency relationship. *Triplett v. Soleil Grp., Inc.*, 664 F. Supp. 2d 645, 650 (D.S.C. 2009). BMG contradicts Plaintiffs' allegation that an agency relationship exists through the affidavit of Joseph Gillen, Chief Financial Officer of BMG. (Dkt. No. 24-4.) Mr. Gillen avers that "BMG does not directly target or solicit business in South Carolina" and that "BMG does not have any employees or representatives in South Carolina." (*Id.* at ¶¶ 4, 7.)

Plaintiffs attach documents to their opposition brief that purport to establish an agency relationship through BMG and BMI. (Dkt. No. 34-4.) The Court reviewed the documents and find they make no reference to BMG exercising control over BMI, and they do not refer to BMI acting as BMG's agent. (*Id.*) The Declaration of John Ellwood, one of BMI's attorneys, reflects that BMI operates a non-profit performing rights organization (PRO) and it distributes income to

---

allegedly infringing song sufficient to permit the reasonable inference Defendant was aware of Plaintiffs copyright at the time of the alleged infringement.)

its affiliated songwriters and music publishers which has included BMG. (Dkt. No. 34-4 at pg. 5 ¶ 3.) Mr. Ellwood declares that BMG granted BMI the right to a non-exclusive public performance right to certain musical compositions and the right to issue public performance license agreements to music users. (Dkt. No. 34-4 at pg. 4–5 ¶¶ 2, 5.) He avers that BMI grants music users "blanket license agreements" to perform any of the works in BMI's repertoire. (*Id.*) BMI is authorized to maintain infringement actions for infringement of the pubic performance rights in BMG's musical compositions to which BMI has a public performance right. (Dkt. No. 34-4 at pg. 5 ¶ 5.) Mr. Ellwood's declaration relates to previous litigation initiated by BMI and the suit makes no reference to or establishes that BMG exercises control over BMI, but rather demonstrates BMG granted BMI the right to a non-exclusive public performance right and the ability to maintain infringement actions when that right is violated. (*Id.* at 34-3.)

Although the documents make reference to BMI's contacts and business activity in South Carolina, the Supreme Court of the United States has made clear that specific jurisdiction is based on the defendant's contacts with the forum state- not plaintiff's or a third party's contacts- that relate or give rise to the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Plaintiff cannot satisfy this requirement by relying on "random, fortuitous, or attenuated" contacts Defendant makes by interacting with other persons affiliated with the forum. *See id.* at 286; citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Based on the allegations, pleadings, and affidavits before it the Court finds Plaintiffs may have felt the brunt of the harm in South Carolina simply because there are South Carolina residents, but the record does not reflect South Carolina was the focal point of the harm. The Court finds that BMG did not direct tortious activity toward South Carolina and as such the effects test is not met. *See Consulting Eng'rs Corp.*, 561 F.3d at 280 (noting that if Plaintiff cannot demonstrate the forum was the focal point

of the alleged tortious activity then a finding of specific jurisdiction is not warranted under the "effects test.") The Court finds the "effects test" is not met because an agency relationship cannot be inferred based on the record before it and as a result there are no allegations or facts to suggest BMG directed tortious activity toward South Carolina. In addition, Plaintiffs allege Ultralight Beam was performed in New York (Dkt. No. 15 at ¶¶ 31, 32) and make no other allegations pertaining to a public performance in South Carolina or other profit gathering measure in South Carolina aside from the allegation that the copyrighted Green samples were sold to South Carolina and non-South Carolina individuals and entities by a third-party. (Dkt. No. 15 at ¶ 17.) Although the Court finds personal jurisdiction is not satisfied under the "effects test" the Court will review BMG's direct activities and search its contacts with South Carolina to determine whether the exercise of personal jurisdiction is proper. *Consulting Eng'rs Corp.*, 561 F.3d at 280 (finding that the effects test does not supplant the minimum contacts analysis but merely informs it."); *Tetrev.*, 465 F. Supp. 2d at 559–60.

### B.  Direct Purposeful Availment

Upon a review of the complaint, pleadings, and affidavits in the light most favorable to Plaintiffs, the Court finds that BMG does not have sufficient minimum contacts in South Carolina to subject it to this Court's jurisdiction. Plaintiffs must show that South Carolina's long-arm statute authorizes personal jurisdiction over BMG and that the exercise of personal jurisdiction over BMG comports with constitutional due process. *Nolan*, 259 F.3d at 215. Because South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process, the only inquiry is whether due process requirements are met. *ESAB Group*, 34 F. Supp. 2d at 328. To meet due process requirements, Plaintiffs must prove that BMG has "purposefully availed itself of the privilege of conducting activities in the state," that their claims "arise out of those activities," and that "the exercise of personal jurisdiction would be

constitutionally 'reasonable.'" *Nolan*, 259 F.3d at 215. When determining whether a corporation has purposefully availed itself in the forum state, the Court considers a variety of factors.[3]

Plaintiffs sole allegation regarding BMG's "purposeful availment" is the same as what they allege under the "effects test". Plaintiffs argue BMG "directly or through agents . . . engage[d] in conduct . . . giving rise to the claims herein that satisfies the South Carolina long arm statute (S.C. Code § 36-2-803) including the commission of tortious acts outside South Carolina knowing and intending that such act would interfere with South Carolina interests and cause injury within South Carolina." (Dkt. No. 15 at ¶17.) Plaintiffs argue BMG purposefully availed itself of the privilege of licensing its copyrights in South Carolina through the actions of its agent BMI and that Plaintiffs' claims arises out of BMG's contacts within South Carolina. (Dkt. No. 34 at 6–7.) As previously discussed, an agency relationship between BMG and BMI is not inferred from the allegations, pleadings, and affidavits before the Court and as such, BMI's contacts with South Carolina may not be imputed to BMG.

When determining whether a non-resident corporation has engaged in purposeful availment, courts consider a variety of factors, none of which Plaintiffs allege in the Complaint or address through briefing. Plaintiffs concede that BMG is a Delaware limited liability company. (Dkt. No. 15 at ¶ 12.) Mr. Gillen's affidavit avers that "BMG is a Delaware limited liability company with its principal place of business in New York." (Dkt. No. 24-4 at ¶ 2.) Further, he avers BMG is not registered to transact business in South Carolina, and does not (i)

---

[3] The factors include whether the corporation: (1) maintains an office or agents in the forum; (2) owns property in the forum; (3) directly solicits or initiates business in the forum; (4) deliberately engages in significant long-term business activities in the forum; (5) whether parties contractually agreed that the law of the forum would govern dispute; (6) whether defendant made in-person contact with the resident of the forum . . . regarding the business relationship; (7) the nature, quality and extent of the parties communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum state. *Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal citations omitted).

maintain an office, employees, or representatives in South Carolina; (ii) directly solicit or initiate business in South Carolina; or (iii) deliberately engage in significant business activities in South Carolina by distributing products there. (Dkt. No. 24-4 at ¶¶ 3–4.) Plaintiffs do not present additional evidence to establish BMG purposefully availed itself of the privilege of conducting business in South Carolina. As such, Plaintiffs cannot establish the first prong of the specific jurisdiction analysis. The Court need not engage in parts two and three of the specific jurisdiction analysis to conclude that exercising specific jurisdiction over BMG is inappropriate based on the allegations and facts presented and would violate due process. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (finding that if plaintiff cannot satisfy the "first prong of the test for specific jurisdiction," then the Court need not "move on to a consideration of prongs two and three.")

In summary, upon a review of the allegations, pleadings, and affidavits in a light most favorable to Plaintiffs, there are insufficient facts to establish personal jurisdiction over Defendant BMG under the "effects test" as they are insufficient facts BMI acts as BMG's agent and that BMG purposefully directed tortious activity toward South Carolina. In addition, BMG has not purposefully availed itself of the privilege of conducting business in South Carolina.

### Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant BMG's motion to dismiss for lack of personal jurisdiction. (Dkt. No. 24.)

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

August 26, 2019
Charleston, South Carolina