UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Andrew Green and Shirley Green, as legal guardians of N.G. (a minor child)** and **Andreia Samoria Green**<br><br>Plaintiffs,<br><br>v.<br><br>**Kanye West; Getting Out Our Dreams, II, LLC; UMG Recordings, Inc. a/k/a Universal Music Group**; **Def Jam Recordings; Cydel Young d/b/a Mr. Redan Music a/k/a Mr. Redan; BMG Rights Management (US), LLC a/k/a BMG Platinum Songs US** and **John Does 1-30**;<br><br>Defendants. | Case No. 2:19-cv-00366-RMG<br><br>**Plaintiffs' Motion to Compel Production of Documents Identified in Defendants' June 29, 2020, Privilege Log** |

Plaintiffs, pursuant to Fed. R. Civ. P. 37, move[1] to compel production of the documents identified in the Defendants' June 29, 2020, privilege log. (Exhibit A).

## Relevant Background

On August 9, 2019, the Plaintiffs served their first written discovery requests on the Defendants (ECF Entry 70-1 pp. 1-2). The Defendants' January 17, 2020, responses to these requests refused to provide a significant number of documents on the basis of privilege. (ECF Entry 70-1 pp. 33-35, 51-52). The Defendants also refused to produce a privilege log, stating "a

---

[1] Pursuant to LCR 7.04, no supporting memorandum is necessary. Pursuant to LCR 7.02, the parties have conferred on July 17 (in-person), July 20, (email), August 11 (letter), August 12 (telephone), August 24 (letter), September 14 (email), September 16 (email), and September 17 (email) regarding the matters in this motion.

privilege log will be provided following entry of an appropriate Protective Order in the action."[2] (ECF Entry 70-1 p. 83). The Defendants eventually did produce a privilege log on January 27, 2020, during the meet-and-confer process. (ECF Entry 70-1 pp. 85, 122-154). This log did not meet the requirements of Fed. R. Civ. P. 26(b)(5), and on March 23, 2020, the Plaintiffs made a motion to compel. On June 18, 2020, this Court ordered the Defendants to amend their privilege log of documents responsive to Plaintiffs' requests to produce 36-38.[3] (ECF Entry 80 pp. 5-7).

On June 29, 2020, the Defendants produced in response to this order an amended privilege log. (Exhibit A). This privilege log, which remains largely noncompliant with the rules, identifies unprivileged communications. This is exemplified by Document 82: a February 10, 2020, email from attorney Michael Guido to attorneys Lisa Lester and Renee Karalian with the subject line: "FW: URGENT SIDE ARTIST CLEARANCE REQUEST: Kanye West w/ Kirk Franklin". (Exhibit A p. 6). Noah Goldstein and Che Pope (presumably employees or agents of West or GOOD) are copied on this email. The Defendants produced this document to the Plaintiffs at bates DEF0003377-3378,[4] and Plaintiffs' counsel brought the production of this document to Defendants' counsel's attention via letter on July 6, 2020. (Exhibit B). On July 15, 2020,

---

[2] This refusal had no basis in law. It was the responsibility of the Defendants to seek any protective order. Fed. R. Civ. P. 26(c)(1).

[3] The subject matter of these requests is the Defendants' sample clearance process:

*Request 36*: "All agreements with sample clearance companies or services for the years 2015 to the present." (ECF Entry 70-1 p. 51).

*Request 37*: "All documents, including reports, emails, memoranda, and correspondence, representing sample clearance, or attempts at sample clearance, for all samples in 'The Life of Pablo'." (ECF Entry 70-1 p. 51).

*Request 38*: "All memoranda, correspondence, and/or documents setting forth your sample clearance process, whether internally or via a third party, from 2015 until the present." (ECF Entry 70-1 p. 52).

[4] Defendants have designated this document as confidential under the current confidentiality order.

Defendants' counsel responded to this letter: "With respect to DEF0003377-3378, the February 10, 2016, email string was inadvertently designated as privileged. We withdraw that designation." (Exhibit C). Similarly, in September 17, 2020, during the meet-and-confer process, Defendants agreed to produce confidentially documents 118-120, 122-125, 144-145, 166-169, 180-184, 193, and 198, which were previously withheld as attorney-client privileged.

The parties took the deposition of fact witness Lisa Lester on September 10, 2020. (Exhibit E).[5] Lester testified she was the attorney retained by certain Kanye-West-related entities to perform sample clearance for "Ultralight Beam", though her firm was terminated a week or week-and-a-half after "The Life of Pablo" was released.[6] (Lester 50:7-12; 91:7-92:22; 102:3-13). Lester testified she did not represent Defendant UMG in her work on "Ultralight Beam". (Lester 103:7-10). Lester also testified she did not represent a person named Mike Dean, a company named "Dean's List", or S. Carter Enterprises in her work on "Ultralight Beam". (Lester 103:11-16). Further, during Defendants' examination, Lester revealed the existence and substance of heretofore-unknown communications between her and Defendants Good & West's subsequent law firm regarding clearance of the Green Samples:

| | |
|---|---|
| [Defendants' counsel:] | Was this letter the first time that anyone raised any issue [to you] regarding authorization to use the audio clip or about negotiat[ing] a license fee? |
| [Plaintiffs' counsel]: | Object to the form. |
| [Lisa Lester]: | I believe there may have been a question when we were first let go, meaning Carroll Guido, from the new counsel about clearance, but other than that this is the first correspondence, correct. |

---

[5] This exhibit is a rough transcript.

[6] "The Life of Pablo" was released February 14, 2016.

(Lester 59:12-21). Plaintiffs' counsel later attempted to question Lester regarding this communication, but Lester refused to answer these questions, citing attorney-client privilege. (Lester 84:24-88:10).

On September 16, 2020, Defendant West posted via his Twitter account a large quantity of confidential and attorney-client privileged documents and communications, apparently with the intent to "expose these contracts and make them transparent". (Exhibit E). These disclosures included a text conversation with one of his attorneys, several previously-unproduced contracts referencing Defendant West's seventh album (*i.e.* "The Life of Pablo"),[7] and a memorandum from Defendant West's attorneys analyzing Defendant West's main licensing agreement (previously produced by Defendants).

## Argument

I. **Attorney-Client Privilege, to the extent it exists, has been waived.**

Lester's testimony putting at issue a post-termination sample clearance communication from subsequent counsel's constitutes a waiver of the attorney-client privilege.[8] The doctrine of "at issue waiver" is "based on notions of fairness and truth-seeking" and "has been analogized to the door-opening doctrine in evidence," under which "evidence that is otherwise inadmissible may become admissible if the opposing party 'opens the door' and the evidence should be considered by the factfinder in 'fairness and completeness of the information.'" *E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co.*, No. 2:14-CV-2567-RMG, 2015 WL 12831737, at *2 (D.S.C. June 11, 2015). This doctrine is consistent with the courts' policy to disfavor

---

[7] Several of these contracts reference a heretofore-unknown Defendant-West-related-entity named "Rock the World, LLC".

[8] This argument assumes sample clearance is a matter of legal advice, which the Plaintiffs dispute. See argument II, *infra*.

attorney-client privilege, due to its tendency to interfere with the courts' truth-seeking mission. *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997). It is also consistent with courts' tendency to recognize the privilege "only to the very limited extent that…excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980).

At issue waiver is triggered when the following are satisfied:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case: and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*United States v. White*, 944 F. Supp. 2d 454, 459 (D.S.C. 2013). The Defendants have asserted authorization as an affirmative defense to the Plaintiffs' claims (ECF Entry 25 ¶ 87), making their clearance of the Green Samples, or failure to do so, relevant to this case. Lisa Lester's deposition has brought to light the fact that the Defendants questioned the sample clearance in "Ultralight Beam" as early as February of 2016. Review of the documents, which memorialize sample clearance for this song and album, is the only way Plaintiffs may explore this issue. Lack of access to these documents prevents the Plaintiffs from developing their case, prejudicing them. The Defendants' efforts at sample clearance, or failures to do so, are also relevant to Defendants' willful infringement of Plaintiffs' copyright and/or rights of publicity, and Defendants' knowledge of violations of 17 U.S.C. § 1202.

Defendants have also waived attorney-client privilege by Lester's (as Defendant GOOD and West's attorney) sharing of allegedly privileged emails with third parties.[9] Voluntary disclosure of attorney-client privileged communications constitutes a waiver of attorney-client

---

[9] On September 17, 2020, Defendant West waived privilege

privilege. *E.g. Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994) The June 29, 2020, privilege log contains a considerable quantity of emails from Lester copying Nicole Wyskoarko of Defendant UMG Recordings, Inc., Mike Dean of Dean's List, and Desiree Perez of S. Carter Enterprises. (Appendix A). Lester has testified she does not represent these persons and entities; privilege has therefore been waived as to any communication they were party to. There are also other third parties privy to the communications described in the June 29 privilege log, such as Boulevard Management, Scooter Braun, Andrew Dawson, Roc Nation, Kyle Ross, Plain Pat, and Joe Perez. Any privilege in these communications is likewise waived. (Appendix A).

Finally, Defendant West's September 16, 2020, Twitter posts evidence Defendant West's intent "expose" and "make…transparent" the entire process of recording music, ostensibly for his children to obtain ownership of his masters. West's disclosures represent a waiver of attorney-client privilege on the subject matter of the totality of the music recording process. Of note for this motion, section 10.05 of what appears to be West's original recording agreement addresses the unauthorized use of samples. (Ex. E, bates 00057).

Regardless of how, and to what extent, the Defendants have waived attorney-client privilege, it extends to the subject matter of sample clearance. *See e.g. Sheet Metal Workers Int'l Assoc.*, 29 F.3d at 125; *Hawkins v. Stables*, 148 F.3d 379, n.4 (4th Cir. 1998). Sample clearance is precisely the subject matter of the documents identified in the June 29 privilege log. <u>Plaintiffs would request this Court order the production of these documents forthwith, but not later than September 28, 2020 - the parties have scheduled mediation for September 30, the Plaintiffs have noticed the corporate Defendants' depositions for October 1-3,[10] and discovery closes on October 3 under the current scheduling order.</u>

---

[10] These depositions will be rescheduled if the scheduling order is amended.

## II. In the alternative, Defendants' June 29, 2020, privilege log does not identify privileged communications.

Defendants' admission the February 10, 2016, email string between Michael Guido, Lisa Lester, Noah Goldstein, Che Pope, Nicole Wyskoaroko, and others was unprivileged is an implicit concession that communications in the course of sample clearance, even with an attorney, can be unprivileged. Defendants' September 17th agreement to produce other documents identified in the June 29 privilege log is a further concession that this privilege log was inaccurate. The use of a law firm for sample clearance does not necessarily mean communications and documents arising out of that relationship are attorney-client privileged. In order for the attorney-client privilege to apply, the member of the bar must be "acting as a lawyer". *NLRB v. Interbake Foods, LLC*, 637 F. 3d 492, 502 (4th Cir. 2011) *see also EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017) ("communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, are not privileged, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel.") (citations, quotation marks, and brackets omitted). While the Defendants may have hired a law firm to perform sample clearance, the firm's attorneys were performing sample clearance, and thus attorney-client privilege does not apply.

Sample clearance "refers to the process of obtaining permission to use a sample in a new musical work."[11] *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 886 (6th Cir. 2004). The sample clearance firm in *Diamond Time* described its work as:

> Diamond Time's business included sample clearance services, which refers to the process of obtaining permission to use a sample in a new musical work. According to Diamond Time's website, it offered sample clearance services in two phases. The first included locating the copyright owners, requesting permission to use the sample, and negotiating the fees for its use. The second phase, called

---

[11] Examples of companies that perform sample clearance can be found here: https://www.omarimc.com/top-6-sample-clearance-companies-services-websites-for-singles-albums-mixtapes/ (last visited March 22, 2020).

> "Licensing/Contract Administration," included negotiating agreeable terms with the copyright holders; issuing a Usage Report confirming the terms and requesting a formal written agreement; and overseeing the trafficking, execution, and payment of those agreements.

*Diamond Time*, 371 F.3d at 886. Correspondence to and from the sample clearance firm in *Diamond Time* was referenced in the Sixth Circuit's opinion, and thus was relevant and non-privileged to that copyright infringement action. *Id.* at 886-888. Another example of non-privileged sample clearance communications can be found in *Grand Upright Music v. Warner Bros. Records, Inc.*, 780 F.Supp. 182 (S.D.N.Y. 1991). The plaintiff in *Grand Upright Music* alleged unauthorized sampling by rapper Biz Markie. The district court in that action directly quoted Markie's attorney's letter to a performer on the original master recording seeking authorization. *Grand Upright Music*, 780 F.Supp. at 185. Plaintiffs contend the communications identified in Defendants' June 29 privilege log are no different, and are likewise relevant and discoverable.

The Defendants' June 29 privilege log represents the third time the Defendants have failed to meet the requirements of Fed. R. Civ. P. 26(b)(5), and is also a violation of this Court's June 18, 2020, order. The Defendants' efforts at sample clearance, or failures to do so, are relevant to Defendants' willful infringement of Plaintiffs' copyright and/or rights of publicity, Defendants' knowledge of violations of 17 U.S.C. § 1202, and Defendants' defense of authorization. Unless this Court wishes to inspect *in camera* the approximately 360 pages of purported privileged documents, this Court should deem privilege waived. *See Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2018 WL 2604867, at *4 (D.S.C. May 25, 2018) (forms of relief for inadequate privilege log); *Curtis v. Time Warner Entertainment-Advance/Newhouse P'ship*, No. 3:12-cv-2370-JFA, 2013 WL 2099496 (D.S.C. Order dated May 14, 2013) ("If a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived.").

## Conclusion

Plaintiffs' motion to compel should be granted.

Dated: 09/18/2020

By:  /s/ Jason Scott Luck

Ellis R. Lesemann (Fed ID No. 7168)
erl@lalawsc.com
J. Taylor Powell (Fed ID No. 12265)
jtp@lalawsc.com
Michelle A. Matthews (Fed ID No. 12460)
mam@lalawsc.com
Lesemann & Associates
418 King Street, Suite 301
Charleston, SC 29403
(843) 724-5155

and

Jason Scott Luck (# 9696)
107 S. Parsonage St. (P.O. Box 47)
Bennettsville, SC 29512
843.479.6863 (o)
843.479.7222 (f)
jason@luck.law

**Attorneys for Plaintiffs**