IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Andrew Green and Shirley Green, as legal guardians of N.G. (a minor child) and Andreia Samoria Green,<br><br>    Plaintiffs,<br><br>v.<br><br>Kanye West; Getting Out Our Dreams, II, LLC; UMG Recordings, Inc. a/k/a Universal Music Group; Def Jam Recordings; Cydel Young d/b/a Mr. Redan Music a/k/a Redan; BMG Rights Management (US), LLC a/k/a BMG Platinum Songs US and John Does 1-30;<br><br>    Defendants. | Case No. 2:19-CV-00366-RMG<br><br>**DEFENDANTS' MOTION FOR ORDER COMPELLING PLAINTIFFS TO PRODUCE DOCUMENTS WITHHELD AS PRIVILEGED** |

Pursuant to Federal Rule of Civil Procedure and Local Civil Rule 37, Defendants hereby move the Court for an Order compelling Plaintiffs to produce documents improperly designated as privileged. This motion pertains to the documents listed and described in the following entries on Plaintiffs' Privilege Logs: 153, 157-162, 194-196, 215-216, 220-225, 247-252, 262-278, 283-286, 288-291, 293-294, 296-312, 326-330, 333-345, 347-348.[1] In addition, this motion also seeks production of certain documents identified in Plaintiff Shirley Green's deposition but which are improperly being withheld.

---

[1] Plaintiffs have served two privilege logs in this case. A copy of the first, served on June 28, 2020, is attached to this motion as Exhibit A. Plaintiffs later served an Amended Privilege Log on September 17, 2020, a copy of which is attached as Exhibit I. The Amended Privilege Log contains the same entry numbers and does not rectify the deficiencies set forth in this motion; in some cases, it compounds them. Accordingly, references to the Privilege Log in this motion will be to Exhibit I unless otherwise noted.

1

**Introduction**

This case concerns accusations by Plaintiffs that Defendants failed to obtain authorization to use an audio sample of a video posted online depicting N.G. "praying over" a family member (the "N.G. Praying Video") in a track released by Defendant Kanye West in February 2016 (the "Track"). Defendants always have believed that authorization was properly obtained, both because they were expressly told so by N.G.'s mother, who represented that she had authority to grant permission, and because Plaintiffs failed to raise any objection for nearly three years.

However, recent depositions and discovery appear to show that Plaintiffs secretly intended to sue Defendants for copyright infringement at least as early as February 11, 2016. This date is key. It was the same day that N.G.'s mother pushed for Defendants' representative to confirm that the audio from the N.G. Praying Video would be on the Track. It also was the same day that Defendants' representative confirmed the material terms of the parties' agreement in writing following a telephone discussion. Plaintiffs' privilege log indicates that at some point on that same day, N.G.'s mother discussed the matter with Plaintiffs and an attorney retained by Plaintiffs; the attorney, who was not representing N.G.'s mother, called the matter a "dispute." Of course, in Defendants' eyes, there was no "dispute" at all: the deal was done and N.G.'s mother was excited about it.

In order to sort through this scenario—which would confirm that affirmative defenses including estoppel and unclean hands should apply—Defendants must obtain documents withheld by Plaintiffs as privileged. The allegedly privileged documents consist of emails and telephone memoranda containing and describing communications between Edward Fenno (former copyright attorney for Plaintiffs) and Alice Johnson (N.G.'s mother, who authorized Defendants to use the

sample) as well as Michael Steger (an attorney who, for a time, was held out as purportedly representing Johnson).

On a fundamental level, these documents must be produced because privilege does not and cannot apply. First, Fenno admitted at his deposition that he never has had any attorney-client relationship with Johnson; even if he did, he waived any privilege by freely discussing their conversations at his deposition. Second, Johnson testified at her recent deposition that she never was represented by an attorney at all (Fenno included) and in fact does not even know who Steger is—eviscerating any privilege that could exist pertaining to communications between Fenno and Steger (particularly through the common interest doctrine). Third, Fenno's telephone memoranda describing his conversations with Johnson are not subject to the work product doctrine because they are factual summaries of highly relevant information (including Fenno's conversations with Johnson the day she gave permission to Defendants) that Defendants have not otherwise been able to discover because neither Fenno nor Johnson remembers the substance of the conversations. Finally, documents withheld by Plaintiffs pertaining to Fenno's retention are not privileged under South Carolina law.

In addition to the foregoing, disclosure also is warranted due to the increasingly vacillating justifications Plaintiffs have offered regarding their failure to follow up on a formal agreement that they claimed they needed, their direct and public approval of the Track, and their silence about any claim until nearly three years had passed. In particular, in the September 10 deposition of Lisa Lester (Defendants West's and GOOD's attorney to whom Johnson gave authorization to use the sample), Plaintiffs' counsel suggested that Johnson was a rogue actor seeking to defraud Defendants, implying (without basis) that Defendants should have more thoroughly vetted who she was before negotiating with her. Yet according to the privilege log, Johnson was

communicating with Fenno and Plaintiffs to build a potential claim against Defendants, including on the day she gave authorization. Plaintiffs cannot simultaneously claim that communications with Johnson are privileged, then turn around and suggest she was an independent actor unconnected to them. Plaintiffs' theory invites the implication that Johnson was, with the witting or unwitting help of Plaintiffs and their lawyer, Fenno, seeking to mislead Defendants into believing that a deal existed when Plaintiffs planned to challenge the deal on the basis that Johnson was not authorized as she represented she was. No privilege applies to such communications. *See Union Camp Corp. v. Lewis*, 385 F.2d 143, 144 (4th Cir. 1967) ("The attorney-client privilege is withdrawn upon a prima facie showing that the lawyer's advice was designed to serve his client in commission of a fraud of [sic] crime.").[2]

Last, and as a separate matter, Defendants seek to obtain certain documents being withheld by Plaintiff Shirley Green ("Shirley"), in particular her "personal files" and "book" that she keeps "everything" in. Shirley referenced these documents in her deposition but refused to answer any questions about the documents and admitted she had not given them to her counsel. Shirley also confirmed that she has not searched her emails or other electronic media for communications pertaining to the issues in this case. There is no basis for her to withhold any of these documents.

---

[2] Plaintiffs' new characterization of Johnson as a rogue bad actor is further questionable considering that Plaintiffs admitted they were aware not only that Johnson was speaking to Lester in February 2016, but that she had given Lester permission to use the sample. Exhibit F (Deposition of Andreia Samoria Green ["Andreia Depo."]) at 76:14-78:9, 93:18-94:1, 100:1-6. In one email to Lester, Johnson declared that Plaintiff Andreia Samoria Green was "present" and able to speak if need be. Exhibit B at 5; *see also* Exhibit C. For the Court's convenience, Exhibit B compiles the February 8-11 Johnson-Lester emails into one chronological summary. At the time those emails were sent, Lester and Johnson were in different time zones, with Lester in Los Angeles and Johnson in the Eastern time zone. For this reason, certain of the email exchanges appear to have been sent at conflicting times. Exhibit C consists of the underlying emails used to create this summary, with the exception of the February 13, 2016 message addressed to "samoria@aol.com," which was addressed to Andreia and never sent to Lester.

Accordingly, for the foregoing reasons, as well as the facts and arguments set forth herein, this motion should be granted in full, with Plaintiffs ordered to produce the requested documents.

**Facts**

**A.    Defendants obtain authorization to use the N.G. Praying Video sample.**

On February 8, 2016, Lisa Lester, an attorney for Defendants West and GOOD II, LLC, contacted Alice Johnson, whose email address, singasongcarmin@gmail.com, was listed as the contact for the Instagram account on which the N.G. Praying Video was posted. Lester reached out to Johnson because Defendants sought to use an audio clip from the N.G. Praying Video in the song "Ultralight Beam" on West's new album, "The Life of Pablo," which was scheduled to be released imminently. *See* Exhibits B, C (February 8-11, 2016 emails between L. Lester and A. Johnson).

Between February 8 and 11, Lester and Johnson exchanged multiple emails and had one or more telephone calls about Defendants' potential use of the N.G. Praying Video sample. In the course of those communications, Johnson listened to the proposed song containing the sample and declared that it sounded "amazing," she loved it, and could not wait to purchase the album. *Id.* After asking on February 11 whether the clip (and N.G.) would appear on the album, Lester said yes, provided that Johnson gave authorization by Defendants' deadline to finalize the album, which was in 30 minutes. *Id.* Johnson responded by saying, *inter alia*, "I do approve the clip of [N.G.] being on the track." *Id.* Lester responded with an email memorializing the agreement reached as a result of the discussions over the preceding days:

> Great news. Thanks so much Alice.
>
> We will forward a short agreement shortly that states that you agree to have this clip being included on "Ultra Light Beams" in exchange for $1,000.
>
> Can you also please advise if you are OK with the credit reading "Additional Vocals by [N.G.] and Alice Johnson"?
>
> Thank you again so much for your help on this.
>
> Best,
> Lisa

*Id.* Johnson responded to correct Lester by saying, "[t]he additional vocals would actually read [N.G.] and Samoria Green." *Id.* Lester testified at her September 10, 2020 deposition that, based on this email exchange that confirmed terms discussed in emails and in a couple of phone calls, she believed she had secured authorization to use the N.G. Praying Video sample on "Ultralight Beam." She further testified that she had no reason to believe Johnson lacked authorization or that she should have been talking to anyone else. Exhibit D (Deposition of Lisa Lester ["Lester Depo."]) at 53:16-55:5.

Lester further testified that following the emails exchanged with Johnson on February 11, 2016, she heard nothing more from Plaintiffs regarding the sample at issue until her law firm received a letter from Plaintiffs' attorney, Edward Fenno, on January 7, *2019*. Likewise, Johnson claimed that she made a phone call to Lester's law firm but could not recall if she left a message. She did not follow up by email, and she produced only a February 13, 2016 draft of a message that appeared to be directed to Lester but was sent only to Plaintiff Andreia Samoria Green (at her email address samoria@aol.com). *See* Exhibit C. In the January 7, 2019 letter, Fenno claimed that (1) Johnson was not in fact authorized to permit use of the sample; (2) Johnson confirmed that there was and always had been a dispute over the amount that was to be paid to license the sample;

6

and (3) Johnson said that the license fee was to be "negotiated at a later time."[3] Exhibit H. This lawsuit then commenced on February 7, 2019, shortly before the three-year anniversary of the release of "The Life of Pablo" (and by extension "Ultralight Beam").

**B.   The privilege log confirms that Plaintiffs secretly consulted with Fenno, including while negotiating with Defendants.**

On February 18, 2020, Defendants served a subpoena for documents and testimony on Fenno. This led to a months-long discovery dispute that culminated in the Court denying a Motion for Protective Order filed by Plaintiffs. Thereafter, on June 28, 2020, Plaintiffs produced Fenno's file, along with a ten-page privilege log. Exhibit A. The privilege log referenced numerous communications involving Johnson, as well as communications with Michael Steger, an attorney whom Fenno claimed represented Johnson. Examples include, but are not limited to:

- Multiple emails dated February 11, 2016—the same day Johnson approved use of the sample—between Johnson and Fenno, as well as telephone memoranda from the same day pertaining to calls with Johnson, Andrew Green, and Andreia Samoria Green "regarding background of [the] dispute." Exhibit I, entries 333-334, 342-345, 347-348.

- Emails from late February 2016 between Fenno, Johnson, Andreia Samoria Green, and Shirley Green regarding the N.G. Praying Video. *Id.*, entries 291, 293-294.

- Multiple emails from April 2016 between Fenno and Steger regarding a copyright assignment by Alice Johnson and a "proposed email to [Kanye] West's attorneys." *Id.*, entries 196, 215-216, 220-225.

---

[3] Lester testified that these statements contained in Fenno's letter are untrue. Lester Depo. at 54:21-24, 63:2-64:22, 86:25-87:13. Johnson did not remember telling Fenno any of the things he represented her as having said in his letter. Exhibit G (Deposition of Alice Johnson ["Johnson Depo."]) at 143:14-146:6.

7

12482215.3

- An email from Johnson and memoranda regarding a telephone call with her, both dated January 2, 2019—five days before Fenno's demand letter was sent. *Id.*, entries 153, 157-162.

**C.  Fenno admits that no privilege attached to his communications with Johnson.**

Fenno was deposed on July 17, 2020. With respect to Johnson, he testified that he had never met or seen her in person, but that he "might have talked to her by phone once, by e-mail a half dozen times." Exhibit E (Deposition of Edward Fenno ["Fenno Depo."]) at 10-11). Fenno also stated that he did not represent Johnson and never had. *Id.* at 11.

When asked about his conversations with Johnson, Fenno freely relayed his recollection. *See generally, id.* at 14:2-17:23. However, he was unable to recall many specifics. *See id.,* 16:7-15; *see also id.,* 45:24-46:11; 48:13-49:1; 52:5-14; 53:14-24; 92:18-93:18. Fenno further distinguished between discussions with his clients, for which he asserted privilege, and discussions with Johnson, for which he did not assert privilege. *See id.*, 16:2-5.

Fenno also testified that Steger is a friend of his who began to represent Johnson at some point. *Id.* at 11:20-12:3. According to Fenno, he discussed potential litigation against Defendants with Steger. *Id.* at 12:10-18. However, Fenno claimed he did not have any substantive conversations with Steger until after Steger began representing Johnson. *Id.*

**D.  Johnson denies ever having been represented by an attorney.**

At her deposition, Johnson was shown Fenno's privilege log and invoices detailing the communications at issue, of which she could not recall much, if any substance. She also was asked whether Fenno or Steger had ever represented her. Johnson denied ever having been represented by an attorney, and when asked specifically if she ever was represented by Steger, she said "I don't even know who that is." Johnson Depo. at 16:3-6, 154:19-155:1.

12482215.3

The parties attempted to resolve this issue through written correspondence and by telephone including written correspondence on July 9, several emails later in July, and phone conferences on August 18 and September 9, 2020, but were unable to resolve this issue.

**Argument**

Defendants seek to compel production of five types of documents improperly withheld as privileged by Plaintiffs: (1) communications between Fenno and Johnson; (2) communications between Fenno and Steger; (3) "telephone memoranda" prepared by Fenno describing conversations with Johnson; (4) engagement letters and communications concerning engagement letters withheld as privileged; and (5) Plaintiff Shirley Green's "personal files" and "book."

**A.  Fenno's communications with Johnson should be produced.**

"The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." *State v. Owens,* 309 S.C. 402, 424 S.E.2d 473, 476 (1992). "[T]he burden of establishing the privilege rests upon the party asserting it." *Wilson v. Preston*, 378 S.C. 348, 662 S.E.2d 580, 585 (2008). The Court should compel the production of these communications because, by his own admission, Fenno had no attorney-client relationship with Johnson at any time; in fact, Fenno believed he would have a conflict of interest if he represented Johnson. Fenno Depo. at 91:16-18. Johnson likewise testified that she never had a lawyer, which confirms that the privilege has been waived by her involvement. Johnson Depo. at 16:3-6.

Moreover, even if attorney-client privilege could attach to Fenno's communications with Johnson, Fenno waived the privilege during his deposition testimony by freely discussing whatever material he could recall from his communications with her.[4] *See* Fenno Depo. at 10-14; *see also*

---

[4] To the extent Plaintiffs allege that Fenno's communications with Johnson were protected by the common interest doctrine exception, it was incumbent upon Plaintiffs' counsel to instruct Fenno not to answer questions concerning his communications with Johnson, which he did not.

Plaintiffs' Motion for Protective Order Prohibiting Second Deposition of Edward Fenno, ECF No. 84 at 3 ("Defendants' stated goals for Fenno's deposition have been met. The Defendants have obtained Fenno's testimony … regarding the factual substance of multiple telephone conversations with Alice Johnson"). Accordingly, the communications should be produced for this separate reason.[5]

B. **Fenno's communications with Steger should be produced.**

Fenno withheld at least nine emails with Michael Steger, an attorney who did not represent Fenno's clients and whom Johnson testified she did not even know, claiming "attorney work product." Exhibit I, entries 196, 215-216, 220-225, 247-252, 283-285. Fenno's and Steger's communications on March 4, March 9, March 16, and March 19, 2016, concerned "Alice Johnson representation"; on March 30 they emailed regarding "Alice Johnson's phone number"; and on April 11, 2016, they exchanged emails regarding "potential retention by Alice Johnson" and were still discussing "retention of Steger by Alice Johnson" on April 16; on April 22 they communicated regarding "copyright assignment of Alice Johnson" and "proposed email to West's attorneys," which was also discussed on April 11, 2016. *Id.*

As a threshold matter, none of Fenno's communications with Steger should be privileged because Johnson affirmatively testified that she never retained an attorney, and that she did not even know who Steger was. Johnson Depo. at 16:3-6, 154:19-155:1. Putting that aside, even if Steger did represent Johnson, he was not retained until, at the earliest, April 11 or April 16. Prior

---

[5] Fenno was not shy about asserting the privilege and refusing to answer questions when he felt it was implicated. See ECF No. 84, p. 2 ("Fenno refused to answer many of these questions, citing attorney-client privilege or attorney work product protection, including the common interest doctrine.")

12482215.3

to any purported retention by Johnson, Steger had no relationship with Fenno or the Plaintiffs other than as Fenno's friend. Fenno Depo. at 11:20-12:3. Additionally, as discussed in section D below, communications concerning the retention of an attorney are not subject to privilege. There is thus no theory under which any of the communications between Fenno and Steger would be protected by privilege, and so they must be produced.[6]

Moreover, even if Steger in fact represented Johnson, communications after retention are not protected by the common interest doctrine. The privilege log reveals that Steger and Fenno were communicating, at least in part, concerning "the copyright assignment of Alice Johnson," a matter in which the Greens and Johnson were adverse. Exhibit I, entry 196. In fact, Fenno stated he did not represent Johnson because he believed there would be a conflict of interest in doing so. Fenno Depo. at 91:16-18. As the name implies, the common interest doctrine requires a "common interest." *State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, 225 F. Supp. 3d 474, 482–83 (D.S.C. 2016). However, at least with respect to the assignment of rights, Johnson's interests and the Greens' interests were adversarial. *See AMEC Civil, LLC v. DMJM Harris, Inc.*, No. CIV.A. 06-064 FLW, 2008 WL 8171059, at *3 (D.N.J., Jul. 11, 2008) ("If an interest is adverse between the parties rather than common, the common interest privilege does not apply."). Thus, the common interest doctrine does not apply to those communications.

Finally, by testifying concerning his recollection of the substance of all of his communications with Johnson in his deposition (*see* section A, *supra*), Fenno (and, through their

---

[6] Perhaps recognizing this, Fenno testified that he did not discuss the case with Johnson prior to Steger's alleged retention. Fenno Depo. at 12:7-9. However, the timeline demonstrated by the privilege log shows otherwise. Fenno apparently did not even have Johnson's number before March 30. Likely, Fenno meant that no *substantive* discussions occurred prior to retention, which is largely borne out by the privilege log. He did testify that Steger was his friend and that he "helped connect" Fenno with Johnson. *Id.* at 11:20-22; 91:11-15.

11

failure to assert the privilege, Plaintiffs) has waived any potential privilege with respect to his communications with Johnson. Accordingly, he also has waived the privilege with respect to his communications with Johnson's counsel. To permit Plaintiffs to waive the privilege with respect to Fenno's communications with Johnson but maintain the privilege with respect to Fenno's communications with her purported lawyer would be to allow them to use the privilege as both a sword and a shield, depending on what they feel benefits them. *ContraVest Inc. v. Mt. Hawley Ins. Co.*, No. 9:15-CV-00304-DCN, 2020 WL 1877911, at *4 (D.S.C. Jan. 21, 2020) ("A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield.") (quoting *In re Mt. Hawley*, 829 S.E.2d 707 (S.C. 2019) and 8 Wigmore, § 2388).

C. **Fenno's memoranda of telephone conversations with Johnson should be produced.**

Plaintiffs also withheld several memoranda of telephone conversations with Johnson on the basis of work-product. However, Plaintiffs acknowledge that Defendants are entitled to discovery concerning the substance of Fenno's conversations with Johnson. *See* ECF No. 84, p. 3, *supra*. Fenno was unable to recall the specific substance of his communications with Johnson and was unable to recall whether and how many conversations he had with Johnson, including whether he talked to her on the key date of February 11, 2016 (i.e., the day Johnson confirmed her authorization for Defendants to use the sample under the terms discussed and confirmed). Fenno also could not remember whether and when he discussed a copyright assignment with Johnson. Fenno Depo. at 45:24-46:2. Additionally, although he made pre-suit representations to the Defendants' previous attorney concerning things "I understand from Ms. Johnson," Fenno was

12
12482215.3

unable to recall whether the information came directly from Johnson, or the format in which he allegedly received this information. *Id.* at 51:16-53:24.

The party claiming work product protection has the burden of establishing entitlement thereto. *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988). While Fenno's memoranda concerning his communications with Johnson may classify as work-product, if so, they merely are factual work product. In his deposition, Fenno agreed that his communications with Johnson "were simply for fact-finding purposes." Fenno Depo. at 17:17-23.[7] Factual work product is discoverable if it is relevant and if the discovering party has not been able to obtain the information by other means. Fed. R. Civ. P. 26 (b)(3)(A); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984–85 (4th Cir. 1992). Here, the substance of Fenno's communications with Johnson are relevant. Defendants have attempted to discover that information through Fenno's and Johnson's depositions, but both were unable to recall the substance. It should also be noted that it was Fenno's and his clients' decision to wait for three years after these conversations and after the degradation of Fenno's (and Johnson's) memories to file this suit. Fenno Depo. at 55:20-56:15. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 437 (D. Md. 2005) (requiring that "relevant interview memoranda reflecting facts … are not necessarily protected. They must be produced to plaintiffs' counsel, except as to those portions Royal Ahold can specifically demonstrate would reveal counsel's mental impressions and legal theories concerning this litigation.").

---

[7] Based on this testimony, these same arguments regarding factual work product apply to any emails between Fenno and Johnson that Plaintiffs claim are protected under the work product doctrine. *See, e.g.*, Exhibit I, entries 333-334, 345.

**D. Communications pertaining to the Fenno's engagement should be produced.[8]**

Plaintiffs withheld as privileged several documents pertaining to their retention of Fenno. There is no basis for Plaintiffs to do so. Although there do not appear to be many cases addressing the subject of a party attempting to withhold an engagement letter or communications concerning an engagement letter, "the execution of [an] engagement letter [is] a subject which is generally not protected by the attorney-client privilege." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2015 WL 9850704, at *3 (D.S.C. Dec. 4, 2015), report and recommendation adopted, No. 2:13-CV-1831-DCN, 2016 WL 199625 (D.S.C. Jan. 15, 2016). Indeed, under South Carolina law, an engagement letter "is generally not protected by the attorney-client privilege." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2016 WL 7626175, at *3 (D.S.C. Oct. 17, 2016), report and recommendation adopted, No. 2:13-CV-1831 DCN, 2017 WL 1247862 (D.S.C. Mar. 31, 2017) (quoting *Strickland v. Capital City Mills*, 74 S.C. 16, 7 L.R.A.N.S. 426 (1906)).

Plaintiffs' privilege log entries do not establish that the withheld documents pertain to any legal advice or any communications that are protected from disclosure by the attorney client privilege. Accordingly, Plaintiffs should be compelled to produce these documents as well.

**E. Plaintiff Shirley Green must produce documents she is withholding.**

In addition to the documents being withheld that were identified in Plaintiffs' Privilege Logs, Plaintiffs also must produce documents that were identified and referenced at the deposition of Plaintiff Shirley Green, but have yet to be produced. Specifically, when asked at her deposition how she knew what N.G. was paid for her appearance on "The Steve Harvey Show," Shirley referenced her "personal files" and a "book" that she keeps "everything" in. When asked if she

---

[8] The communications at issue pertaining to Fenno's engagement are identified at entries 269, 270-278, 288-290, 296-312, 326-330, 335-341 of Plaintiffs' Privilege Logs.

had provided these documents to her attorney, she stated "that's personal," and continued to give the same response to repeated questions about the documents, before ultimately stating she had not provided them to counsel. *See* Exhibit J (Deposition of Shirley Green) at 64:1-66:19, 69:22-70:7. Thereafter, when asked if she had searched her emails and other devices for any communications about the subject matter of this lawsuit, she confirmed she had not. *Id.* at 70:8-72:11. There is no basis for Plaintiffs to withhold any of these documents—particularly considering that in the unlikely event any actually are confidential, a Confidentiality Order is in place in this action.

## Conclusion

For these reasons, Plaintiffs should be compelled to produce the materials listed and described at the following entries in Plaintiffs' Privilege Logs dated June 28, 2020 and September 17, 2020: 153, 157-162, 194-196, 215-216, 220-225, 247-252, 262-278, 283-286, 288-291, 293-294, 296-312, 326-330, 333-345, 347-348. In addition, Plaintiffs also should be compelled to produce the identified documents currently being withheld by Plaintiff Shirley Green.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ ROBERT W. WHELAN
John C. McElwaine
Federal Bar No. 6710
E-Mail: john.mcelwaine@nelsonmullins.com
Robert W. Whelan
Federal Bar No. 9242
E-Mail: robert.whelan@nelsonmullins.com
M. Kathleen McTighe Mellen
Federal Bar No. 11652
E-Mail: katie.mellen@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
(843) 853-5200

MITCHELL SILBERBERG & KNUPP LLP

Eleanor M. Lackman (*admitted pro hac vice*)
E-mail: eml@msk.com
Mark Humphrey (*admitted pro hac vice*)
E-mail: mxh@msk.com
2049 Century Park East, 18th Fl.
Los Angeles, CA 90067
(310) 312-2000

*Attorneys for Defendants Kanye West, Getting Out Our Dreams, II, LLC, Def Jam Recordings and UMG Recordings, Inc.*

Charleston, South Carolina

September 18, 2020