UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Andrew Green and Shirley Green, as legal guardians of N.G. (a minor child)** and **Andreia Samoria Green** | ) ) ) ) Case No. 2:19-cv-00366-RMG |
| Plaintiffs, | ) ) ) |
| v. | ) **Plaintiffs' Response in Opposition to Defendants' Motion to Compel** ) ) |
| **Kanye West; Getting Out Our Dreams, II, LLC; UMG Recordings, Inc.** a/k/a **Universal Music Group**; **Def Jam Recordings; Cydel Young** d/b/a **Mr. Redan Music** a/k/a **Mr. Redan; BMG Rights Management (US), LLC** a/k/a **BMG Platinum Songs US** and **John Does 1-30**; | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Plaintiffs submit the following in opposition to the Defendants' motion to compel the production of work product and attorney-client privileged documents from the file of their attorney Edward Fenno. (ECF Entry 117):

Defendants' rapidly changing[1] and increasingly desperate defense of Plaintiffs' claims has now morphed into an amusing, but baseless, accusation of a three-year conspiracy by the Green family to bring a lawsuit against the Defendants. Further, according to the Defendants the Green's

---

[1] On August 14, 2020, the Defendants stated the following in opposition to Defendant Kanye West sitting for his deposition: "…the key issues in the case always have been (1) whether the license to use the sample was properly given, and (2) to the extent that the amount of payment was not agreed upon, what amount would be a proper license fee." (ECF Entry 92 p. 1). To the best of Plaintiffs' counsel's recollection, the Defendants advanced a similar argument at the September 2, 2020, hearing on this motion. It is worth noting Defendants advanced this argument well after the July 17, 2020 testimony of Fenno, the July 22, 2020, testimony of Plaintiff Andreia Green, the July 23, 2020, testimony of Plaintiff Andrew Green, the July 23, 2020, testimony of Shirley Green, and the July 23, 2020, testimony of N.G.

plan to lie in wait for three years was potentially aided and abetted by their barratrous copyright counsel, Edward Fenno.

The Defendants' factual basis for this new narrative, necessary to support their motion to compel, is based on little more than rank speculation. This hardly rises to the level of "substantial need", and certainly does not justify the invasion of Plaintiffs' attorney's case file and privileged communications.

**I.      The Common Interest Doctrine protects most of the documents requested.**

"'[T]he need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter.'" *State Farm Fire and Cas. Co. v. Admiral Ins.*, 225 F.Supp.3d 474, 481 (D.S.C. 2016) (quoting *In re Grand Jury Subpoena*, 902 F.2d 244, 249 (4th Cir. 1990)). To this end, the "Common Interest Doctrine" exists as an exception to the waiver of attorney-client privilege, protecting the transmission of data to which the attorney-client privilege or work product protection has attached when it is shared between parties with a common interest in a legal matter. *See Wellin v. Wellin*, 211 F. Supp.3d 793, 811 (D.S.C. 2016).

The Defendants seek a substantial number of obvious attorney-client privileged documents from Fenno's file on the basis that Alice Johnson was also a recipient. Defendants also seek communications between Fenno and Michael Steger, an attorney from New York. Steger's relationship to Alice Johnson and the Plaintiffs was set forth by Plaintiffs' attorney Edward Fenno during his deposition:

> Q. And there was a name in the file I saw -- I want to say it's Michael Steger. Does that sound right?
> A. Yes.
> Q. Is that S-T-E-E-G-E-R?
> A. S-T-E-G-E-R. I think it's "Steger," I think.
> Q. Okay. Thank you. And what is your relationship with Mr. Steger?

> A. He and I are friends.
> Q. Okay.
> A. He's a lawyer; I'm a lawyer.
> Q. Okay. And what is his involvement, if any, in this case?
> A. As far as I know, he represented Alice Johnson at least for some period of time.
> Q. All right. And can you tell us what period of time you're aware of that he represented Ms. Johnson?
> A. I can't tell you the dates. But it was sometime before he and I started sharing the information with each other.
> Q. Okay. Let me make sure that I understand that. So at some point you and Mr. Steger began talking about this case?
> A. Yes.
> Q. But that was after he began representing Ms. --
> A. Right. I waited until he had signed up with Alice before starting to talk to him about the case.
> Q. Okay. And I'm assuming that the reason you were talking to Mr. Steger about the case is to negotiate the assignment of rights between Ms. Johnson and Ms. Green?
> A. No. It was to prepare for litigation against Kanye.
> Q. Okay.
> A. He was going to represent Ms. Johnson; I was going to represent the Greens. We were all going to go against Kanye.
> Q. I see. All right. Now, did that plan change at some point?
> A. Yeah. At some point Jason [Luck, the undersigned] took over the primary bulk of me going against Kanye. And Steger's client assigned [her] copyrights to my clients, so Alice didn't need to go against Kanye anymore.

(Fenno 11:13-13:10 – entire transcript previously filed at ECF Entry 84-1).[2] Steger's September 25, 2020, declaration supports Fenno's account.[3] (Exhibit A).

The communications requested by the Defendants represent consultations with and between the Greens, Alice Johnson, and their attorneys regarding the unauthorized use of the Green

---

[2] Though the Defendants questioned Fenno on a number of privileged or otherwise inappropriate topics (See ECF Entry 84 p. 2; ECF Entry 84-1), his deposition was never explicitly suspended. *See* Fed. R. Civ. P. 30(d) & LCR 30.03(I).

[3] Alice Johnson's failure to recall Steger's representation is no ground for invading attorney-client privilege.

Samples, a legal matter of common concern.[4] Though the Greens and Johnson did not have a formal agreement memorializing their common interest, it was understood by their counsel. *See State Farm*, 225 F.Supp.3d at 323 ("A written agreement is not required for the common interest doctrine to apply, but there must be an agreement or a meeting of the minds."). Accordingly, these communications are protected by attorney-client privilege.[5]

## II.     The Work Product Doctrine protects the requested memoranda and communications.

The work-product privilege, also known as the work-product doctrine, protects an attorney's work done in anticipation of litigation. *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011). It is rooted on the principle that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Work product comprises two categories: (1) fact work product and (2) opinion work product. *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). Fact work product encompasses purely factual information and consists of materials prepared by an attorney that do not contain the fruit of his mental processes, whereas opinion work product contains an attorney's mental impressions, conclusions, opinions, or legal theories. *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005). Factual work product is entitled to qualified immunity and "is discoverable upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Allen*, 106 F.3d at 607 (internal quotation marks omitted). Opinion work product,

---

[4] To the extent the preparation and execution of Alice Johnson's assignment of rights to N.G. was adversary, the parties to that transaction nonetheless shared a common interest: "[T]o prepare for litigation against [Defendant West]." (Fenno 12:23-13:3).

[5] Defendants' argument that Fenno's disclosure of facts during his deposition has somehow effected a waiver of attorney-client privilege is without merit, as the facts underlying an attorney-client privileged communication are not protected. *E.g. In re Allen*, 106 F. 3d 582, 604 (4th Cir. 1997).

however, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.*; *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988) ("[W]e recognize that the line between opinion and non-opinion work product can be a fine one. But what should not be ordered to be disclosed are pure expressions of legal theory or mental impressions.").

The Defendants seek to obtain the memoranda of Fenno (and his associate attorney) regarding his consultations with the Greens, Johnson, and Michael Steger. Attorney memoranda are the epitome of opinion work product, obtainable only upon a showing of extraordinary circumstances. Such a showing would take the form of prima facie evidence of a crime or fraud. *In re Grand Jury Proceedings* #5, 401 F.3d at 252. The Defendants do not present any proof of a crime or fraud; instead, they present this Court with a reference, without citation, to witness Lisa Lester's deposition claiming Alice Johnson is now a "rogue actor". (ECF Entry 117 pp. 3-4). Based on this assertion, Defendants then invite this Court to speculate that Johnson, with or without the assistance of the Greens and/or Edward Fenno, are engaging in fraud. (ECF Entry 117 p. 4). This unsupported work of fiction does not meet the high evidentiary bar necessary to order the protected documents' production.

To the extent these memoranda contain factual work product (and the factual work product can somehow be parsed from the opinion work product), the Defendants have not met their burden to order their production. Fenno's deposition testimony fairly informed the Defendants of the underlying facts relevant to the memoranda in question: the background of the Instagram video in question (Fenno 48:13-55:23) and Alice's execution of the copyright assignment to N.G. (Fenno 13:21-15:18). The Defendants have received the "substantial equivalent" of these facts, and any intrusion into Fenno's memoranda is unwarranted.

To the extent that Fenno's communications that included Steger and/or Johnson (See Part I) are not attorney-client privileged, they are most certainly protected as factual work product, and are protected as described above.

### III. Production of communications pertaining to the Greens' agreement with Fenno, and Shirley Green's documents serve no purpose.

The Defendants also seek production of a series of attorney-client communications relating to Fenno's agreement to represent the Greens. (Bates 269, 270-278, 288-290, 296-312, 326-330, 335-341). The fact that Fenno represented the Greens, and did not represent Johnson, is not an issue in this action. Neither are Fenno's fees to date, which have been produced. Further, prior drafts of the agreement between the Greens and Fenno would constitute attorney-client privileged communications.

The Defendants also seek production of a "personal file" Plaintiff Shirley Green mentioned in her deposition would have information on N.G.'s payment for appearing on the Steve Harvey Show. The Defendants were able to obtain testimony as to this payment at Shirley Green's testimony, so production of file, to the extent it exists, would be unnecessarily duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (limiting discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Defendants also seek any communications from Plaintiff Shirley Green relating to the subject matter of this lawsuit; after review, Plaintiff Shirley Green represents she has none.

### Conclusion

The Defendants' motion should be denied. However, to the extent this Court believes that the documents requested by the Defendants may not be privileged, Plaintiffs would request this Court inspect them *in camera* before ordering their production. *See Wellin v. Wellin*, No. 2:13-

CV-1831-DCN, 2018 WL 2604867, at *4 (D.S.C. May 25, 2018) (citing *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-cv-749- 41TBS, 2015 WL 1470971, at *9 (M.D. Fla. Mar. 31, 2015)).

| | |
|---|---|
| Dated: 09/25/2020 | By:     /s/ Jason Scott Luck    |
| | Ellis R. Lesemann (Fed ID No. 7168) |
| | erl@lalawsc.com |
| | J. Taylor Powell (Fed ID No. 12265) |
| | jtp@lalawsc.com |
| | Michelle A. Matthews (Fed ID No. 12460) |
| | mam@lalawsc.com |
| | Lesemann & Associates |
| | 418 King Street, Suite 301 |
| | Charleston, SC 29403 |
| | (843) 724-5155 |
| | |
| | and |
| | |
| | Jason Scott Luck (# 9696) |
| | 107 S. Parsonage St. (P.O. Box 47) |
| | Bennettsville, SC 29512 |
| | 843.479.6863 (o) |
| | 843.479.7222 (f) |
| | jason@luck.law |
| | |
| | **Attorneys for Plaintiffs** |